UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RALEIGH LIMITED, INC.,                          )
                                                )
     *Plaintiff,*                               )
                                                )          Case No. 1:20-cv-02966-JMS-DLP
     *vs.*                                     )
                                                )
THE OHIO SECURITY INSURANCE COMPANY,            )
and BRIDGE INSURANCE & FINANCIAL                )
SERVICES, LLC,                                  )
                                                )
     *Defendants.*                             )

## ORDER

     This action relates to an insurance policy issued by Defendant Ohio Security Insurance Company ("Ohio Security") to Plaintiff Raleigh Limited, Inc. ("Raleigh").  Raleigh purchased its insurance policy from Ohio Security with the assistance of Defendant Bridge Insurance & Financial Services, LLC ("Bridge"), an insurance agent.  On November 12, 2020, Ohio Security removed the case to this Court on the basis of diversity jurisdiction.  [Filing No. 1.]  Presently pending is a Motion to Remand filed by Raleigh.  [Filing No. 19.]

### I.
### BACKGROUND

     Raleigh is a family business that runs a clothing store called Raleigh Limited Menswear in Indianapolis, Indiana.  [Filing No. 41 at 3.]  Raleigh sells "tailored menswear, made to measure suits, sportswear, footwear, and accessories, including designer collections."  [Filing No. 41 at 3.]  It has no online presence and only sell its goods in person.  [Filing No. 41 at 3.]  Upon the onset of the global COVID-19 pandemic, due to public health orders issued by the State of Indiana and the Marion County, Indiana Health Department, Raleigh was forced to shut down for a significant

amount of time.  [Filing No. 41 at 3-6.]  Due to the closure of its shop, Raleigh lost an estimated $500,000 in income.  [Filing No. 41 at 7.]

Raleigh filed a claim under a commercial insurance policy it purchased, through Bridge, from Ohio Security ("the Policy").  [Filing No. 41 at 7-8.]  Ohio Security denied coverage for Raleigh's claim, citing the following clause in the Policy:  "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  [Filing No. 41 at 7; *see also* Filing No. 41-1; Filing No. 41-2.]

On September 30, 2020, Raleigh filed a lawsuit against Ohio Security in Indiana State Court for breach of the Policy, and Ohio Security then removed the case to this Court on the basis of diversity jurisdiction, alleging that it is a citizen of New Hampshire and Massachusetts, and that Raleigh is a citizen of Indiana.  [Filing No. 1 in *Raleigh Limited, Inc. v. The Ohio Security Ins. Co.*, No. 1:20-cv-02749-SEB-DLP.]  One day after the case was removed, Raleigh voluntarily dismissed it.  [*See* Filing No. 6 in *Raleigh Limited, Inc. v. The Ohio Security Ins. Co.*, No. 1:20-cv-02749-SEB-DLP.]  On October 27, 2020 – just four days after voluntarily dismissed its first lawsuit – Raleigh initiated a lawsuit in Indiana State Court against Ohio Security for breach of the Policy and against Bridge for negligence.  [Filing No. 1-1 at 7-19.]  Ohio Security again removed the case, alleging that Raleigh fraudulently joined Bridge as a defendant, so the fact that Raleigh and Bridge are both Indiana citizens should be disregarded for diversity jurisdiction purposes. [Filing No. 1.]  Raleigh has now filed a Motion to Remand, [Filing No. 19], arguing that the Court does not have diversity jurisdiction because both Raleigh and Bridge are Indiana citizens.

## II.
### DISCUSSION

### A.    Fraudulent Joinder

In Raleigh's brief in support of its Motion to Remand, it argues that its claims against both Ohio Security and Bridge are valid and that it did not fraudulently join Bridge. [Filing No. 20 at 6.] Raleigh argues that it has a "special relationship" with Bridge. [Filing No. 20 at 3.]  It claims that Bridge negligently advised Raleigh and can be held liable because of a "special relationship" under Indiana law above a normal insurer-insured relationship. [Filing No. 20 at 9-10.]  Raleigh argues that "it has been a customer of Bridge for a long period of time—since at least 2006—and that Bridge counseled Raleigh on the types of insurance Raleigh should purchase to covers its operations and risks." [Filing No. 20 at 11.] Additionally, Raleigh alleges that "Bridge holds itself out as a highly-skilled insurance expert." [Filing No. 20 at 11.]  Raleigh notes that it relied on Bridge's expertise and will seek more evidence of their special relationship in discovery. [Filing No. 20 at 11.]  Raleigh additionally argues that because this is a declaratory judgement action, the Court should "decline jurisdiction under the Declaratory Judgment Act" in its discretion, [Filing No. 20 at 13], because the insurance issues accompanying COVID-19 are "novel and will impact a significant portion of all sorts of businesses operating in Indiana," [Filing No. 20 at 17].

In response, Ohio Security argues that the Court should ignore Bridge's joinder for the sake of diversity jurisdiction because Raleigh has fraudulently joined Bridge and the claim against Bridge is not ripe. [Filing No. 39 at 2.] Ohio Security directs the Court's attention to "the timing and sequence of events.  Raleigh dismissed the first case the day after it was removed, and then, a few days later, filed a new lawsuit with Bridge as a defendant solely to defeat Ohio Security's statutory right to removal.  If Raleigh thought it has a legitimate claim against Bridge, it should have sued Bridge in the first action." [Filing No. 39 at 3.]  Ohio Security asserts that Raleigh "has

no real intention to prosecute its purported contingent claim against Bridge," and only joined Bridge to destroy diversity jurisdiction. [Filing No. 39 at 4.] Ohio Security further argues that Raleigh has "no reasonable possibility it will prevail against Bridge," and that Bridge owed Raleigh no heightened duty commensurate to a special relationship. [Filing No. 39 at 4.] On the contrary, Ohio Security argues, Raleigh and Bridge had "an ordinary insured-agent relationship" since Raleigh met with Bridge minimally; Bridge did not hold itself out as an expert on its website; Raleigh's years-long relationship with Bridge is insufficient alone; and Raleigh made its own choices about what insurance to purchase. [Filing No. 39 at 6-12.] Raleigh also argues that because the Court "has jurisdiction over the breach of contract damages claim," it "should also retain the declaratory judgment count." [Filing No. 39 at 14.]

In reply, Raleigh argues again that Ohio Security has failed to meet the "stringent burden" of showing that the fraudulent joinder doctrine applies. [Filing No. 43 at 2-3.] Raleigh argues that Indiana law supports a factual dispute worthy of remand based on the possibility of a special relationship. [Filing No. 43 at 5.] Raleigh rejects the characterization of its actions, and reiterates its argument that the Court should exercise its discretion under the Declaratory Judgment Act to decline jurisdiction. [Filing No. 43 at 12-15.]

Federal district courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "[The] district courts may not exercise jurisdiction absent a statutory basis," *id.*, and the removing party "bears the burden of establishing federal jurisdiction," *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). Here, Ohio Security has removed this case pursuant to 28 U.S.C. § 1332 which, in relevant part, provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between…citizens of different States…." 28 U.S.C. § 1332(a).  Since 1806, the Supreme Court has "read th[is] statutory formulation…to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

Under the fraudulent joinder doctrine, "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). Thus, "[i]n determining whether there is diversity of citizenship, parties fraudulently joined are disregarded." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993).  While outright fraud in the plaintiff's pleading of jurisdictional facts is sufficient to invoke the doctrine successfully, such literal fraud is unnecessary. *Id.*; *see also Walton v. Bayer Corp.*, 643 F.3d 994, 999 ("Like many legal doctrines, 'fraudulent joinder' is misnamed.").

In determining whether a party has been fraudulently joined, the Seventh Circuit has articulated a four-factor test, where a reviewing district court should consider, "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; (2) the timeliness of the request to amend; (3) whether the plaintiff will be significantly injured if joinder is not allowed; and (4) any other relevant equitable considerations." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009).[1]  However, the fraudulent joinder doctrine "is not *dispositive* of whether joinder is improper; it is simply another tool in the district judge's belt for scrutinizing the plaintiff's motive for joining a nondiverse party."  *Id.* at 764 (emphasis in original).  Therefore, "the district court must ask whether there is 'any reasonable possibility' that

---

[1] While this series of factors does not seem to appear in later Seventh Circuit cases addressing fraudulent joinder, because the Defendants' arguments align with components of this test, the Court will examine these factors accordingly.

the plaintiff could prevail against the non-diverse defendant." *Id.* (quoting *Poulos v. Naas Foods, 959 F.2d 69, 73 (7th Cir. 1992)*).  This analysis is in essence "an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos, 959 F.2d at 73*.

A plaintiff has an additional defense to a fraudulent joinder claim:  "[A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants." *Walton, 643 F.3d at 1001*.  This requires that there be a defense "common both to the diverse defendant[] and to the nondiverse one." *Id.*

In support of a claim of fraudulent joinder, a removing defendant may present uncontested evidence to show that the facts of the case preclude a plaintiff's claim against a nondiverse defendant.  For example, where a removing defendant provides an uncontroverted affidavit demonstrating that a nondiverse defendant had "absolutely nothing to do with" the claims raised by the plaintiff, the lack of diversity does not prevent removal. *Faucett v. Ingersoll-Rand Mining & Mach. Co., 960 F.2d 653, 655 (7th Cir. 1992)*.

The fraudulent joinder doctrine imposes a burden far more stringent than that ordinarily imposed on a removing defendant. *See Schur, 577 F.3d at 764*.  A defendant invoking the doctrine must demonstrate that, "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.*  (emphasis and internal quotation omitted).  The Seventh Circuit has noted that "some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id.*  The Seventh Circuit has described defendant's burden as needing to show that there

is no "reasonable possibility" of the plaintiff's success, *Poulos*, 959 F.2d at 73; that the plaintiff's case is "utterly groundless," *Walton*, 643 F.3d at 999; or that the plaintiff's claim has "no chance of success," *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015).

The fraudulent joinder inquiry is also far more circumscribed than an application of state substantive law.  When a district court applies state substantive law in diversity cases, it must "predict[ ]…how the supreme court of the state would decide the matter" as if it were that tribunal. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002).  In contrast, in its fraudulent joinder jurisprudence, the Seventh Circuit has largely assessed only whether the plaintiff's pleadings align with what the law at least asks the trier of fact to determine, finding that fraudulent joinder applies when such an alignment is not present. *See, e.g.*, *Gottlieb*, 990 F.2d at 328 (noting that the plaintiff failed to "allege that the limited partnerships caused any injury"); *Poulos*, 959 F.2d at 74 (noting that the plaintiff "alleged no impropriety or disregard of the [defendant's] corporate form"); *Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875 (7th Cir. 1999) (noting that the plaintiffs "alleged no facts indicating that [defendant] acted in bad faith beyond complying with the terms of [defendant's] allegedly illusory policy").  Hence in assessing a fraudulent joinder argument, all that the Court must determine is whether there is a "reasonable possibility" that the state court would hold that the plaintiff stated a viable claim to relief against the nondiverse defendant. *Morris*, 718 F.3d at 672-73 (holding that proper inquiry is not how the district court would resolve a dispositive choice of law issue, but whether there was a "reasonable possibility [that] the state court would have ruled against" the nondiverse defendant).

In determining whether there is a special relationship between an insured and an insurance agent, Indiana courts consider whether the agent:

> (1) exercise[ed] broad discretion to service the insured's needs; (2) counsel[ed] the insured concerning specialized insurance coverage; (3) [held] oneself out as a

highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) receiv[ed] compensation, above the customary premium paid, for the expert advice provided.

*Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 264 (Ind. 2015) (citation omitted).

The Indiana Supreme Court noted that "these factors are not exhaustive, nor is any particular factor dispositive." *Id.* The Indiana Supreme Court has stressed that "an insurance agent's duty may hinge on the nature of its relationship with the insured, which 'turn[s] on factual issues that must be resolved by the trier of fact.'" *Id.* (quoting *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008)).

On its face, Raleigh's Complaint alleges factual issues that "must be resolved by the trier of fact." *Id.* (quotation and citation omitted). Specifically, Raleigh alleges in its Complaint that: (1) it is "not in the insurance industry and does not know the coverages it needed"; (2) it "relied on Bridge to advise Raleigh about the types of insurance coverage available and needed for Raleigh's operations and risks"; (3) "Bridge exercised broad discretion in making such recommendations"; (4) it "relied on Bridge's promise to continually evaluate Raleigh's risks and tailor an insurance program for its business"; and (5) "Bridge . . . is an insurance agency that holds itself out as a highly-skilled insurance expert. On its website, it states: We specialize in protecting you from your exposures and will tailor a program specifically for your business." [Filing No. 41 at 8-9.] Under the analysis set forth in *Indiana Restorative Dentistry*, the Court cannot conclude as a matter

of law that Raleigh's claim against Bridge has no reasonable possibility of success.[2]

Having concluded that Ohio Security has not met its burden of showing that Raleigh's claim against Bridge has no reasonable possibility of success, the Court considers the factors set forth in *Schur. See Schur*, 577 F.3d at 759 (A "court analyzing joinder of a nondiverse party whose presence will destroy diversity should consider" the four-factor inquiry as well).

The Court considers the first and second factors together: "(1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction," and "(2) the timeliness of the request to amend." *Id.* The Court acknowledges that the timing of Raleigh's amendment to add Bridge as a defendant is suspicious. It did so just a few days after Ohio Security removed the first lawsuit to federal court, and Raleigh voluntarily dismissed that lawsuit. The Court also notes, however, that Raleigh may simply have realized at the last minute that it may have a remedy against Bridge under *Indiana Restorative Dentistry*.

As to the third factor under *Schur* – "whether the plaintiff will be significantly injured if joinder is not allowed," *Schur*, 577 F.3d at 759 – if the Court finds that the fraudulent joinder doctrine applies and denies Raleigh's Motion to Remand, Raleigh may very well have to litigate "parallel lawsuits in state and federal court." *Id.* Such a state of affairs is costly, complicated, and

---

[2] Ohio Security directs the Court's attention to a comment from the Indiana Supreme Court in *Indiana Restorative Dentistry* noting that "[i]n over thirty years, *Cook* [*United Farm Bureau Mutual Ins. Co. v. Cook*, 463 N.E.2d 522 (Ind. Ct. App. 1984)] is the only Indiana decision to find a special relationship between an insurance agent and an insured as a matter of law." [Filing No. 39 at 9 n.5 (citing *Indiana Restorative Dentistry*, 27 N.E.3d at 266).] The Court notes that the Indiana Supreme Court in *Indiana Restorative Dentistry* reversed the lower court's grant of summary judgment and remanded the case for a factual determination regarding whether a special relationship existed between the insured and its agent. 27 N.E.3d at 264 ("The designated evidence here paints an inconclusive picture regarding the nature of [the insurance agent's] and [the insured's] relationship"). Significantly, the Indiana Supreme Court was considering whether a grant of summary judgment was proper – a different standard than the one used to determine whether the fraudulent joinder doctrine applies.

contradicts the principle that "plaintiffs [are] masters of the complaint [and] may include (or omit) claims or parties in order to determine the forum." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000).

Finally, the Court considers the fourth factor under *Schur*: "any other relevant equitable considerations." *Schur*, 577 F.3d at 759. The Court recognizes that "the removal statutes are to be strictly construed to preserve the limited jurisdiction of federal courts." *Morris*, 718 F.3d at 670 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). Expanding the scope of the fraudulent joinder doctrine "might well substantially increase the number of removal petitions filed in federal court, which would stall the administration of justice at both the state and federal levels as district courts engage in what can often be complex acts of prediction." *Id.* (quotation and citation omitted). And while Ohio Security's equities are important to consider, it is not without remedy at later stages of this litigation. Should the claim against Bridge be resolved short of trial, Ohio Security is welcome to initiate removal again. Additionally, Rule 11-type sanctions are available at any stage of the litigation if an opposing party engages in abusive behavior. In comparison, a finding that Bridge was fraudulently joined might be viewed as tantamount to a finding that claims against Bridge should be dismissed, causing Raleigh to be "significantly injured if joinder is not allowed." *See Schur*, at 577 F.3d at 759.

In sum, the Court finds that Ohio Security has not shown that Raleigh's claim against Bridge has no reasonable possibility of success, and also finds that the factors set forth in *Schur* weigh against the application of the fraudulent doctrine. Accordingly, the Court **GRANTS IN PART** Raleigh's Motion to Remand to the extent that this case is **REMANDED** to Marion Superior Court.

## B.     Request For Attorneys' Fees

In its Motion to Remand, Raleigh requests that the Court award it the attorneys' fees it incurred in connection with its Motion to Remand.  [Filing No. 20 at 18-19.]  Raleigh argues that Ohio Security has delayed the resolution of Raleigh's claims by removing this action, and that Ohio Security "lacked an objectively reasonable basis to remove this action to federal court."  [Filing No. 20 at 18.]  Raleigh notes that its counsel requested that Ohio Security voluntarily consent to remand, but that Ohio Security's counsel declined to do so.  [Filing No. 20 at 19.]

In response, Ohio Security argues that Raleigh relies upon cases where "it was clear that the party removing the case had no reasonable basis to do so," and that "[n]one of these cases remotely resemble the case before this Court."  [Filing No. 39 at 15-16.]

Raleigh reiterates its arguments in its reply.  [Filing No. 43 at 14-15.]

"[A] district court may award attorneys' fees under § 1447(c) only where the removing party lacked an 'objectively reasonable basis' for seeking removal."  *Wolf v. Kennelly*, 574 F.3d 406, 411 (7th Cir. 2009) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)). Specifically:

> [I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees.  By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.

*Wolf*, 574 F.3d  412.

The Seventh Circuit has found the award of attorneys' fees appropriate when removal "was worse than unreasonable; it was preposterous."  *See MB Financial, N.A. v. Stevens*, 678 F.3d 497, 498 (7th Cir. 2012).  This Court has awarded attorneys' fees when the issue of whether removal

11

was appropriate was "not a close call." *See Zotec Partners, LLC v. Herald*, 2013 WL 3989424, at *5 (S.D. Ind. 2013). This is not such a case.

Ohio Security raised a plausible argument – that Raleigh dismissed its original Complaint and then joined Bridge shortly thereafter in an explicit attempt to destroy diversity jurisdiction. This argument is expressly identified as an important consideration in *Schur*, *see* 577 F.3d at 767, and the Court's conclusion may have been different were it not for the extremely high burden that a defendant must meet in the fraudulent joinder context. Consequently, clearly established law did not foreclose Ohio Security's basis for removal, so the Court declines to award attorneys' fees. *See Wolf*, 574 F.3d at 412. Raleigh's Motion to Remand, [Filing No. 19], is **DENIED IN PART** to that extent.

### III.
#### CONCLUSION

For the foregoing reasons, Raleigh's Motion to Remand, [19], is **GRANTED IN PART** to the extent that the Court **DIRECTS** the Clerk to **REMAND** this case to the Marion Superior Court. Raleigh's Motion to Remand, [19], is **DENIED IN PART** to the extent that the Court declines to award Raleigh its attorneys' fees in connection with the Motion to Remand. All deadlines in this case are **VACATED**, and all pending motions are **DENIED AS MOOT**.

Date: 4/23/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**